## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

           Plaintiff,

   v.

PIONEER BANK,
PIONEER BANCORP INC., and
CLOUD PAYROLL, LLC,

         Defendants.

Case No. 1:20-cv-487 (DNH-DJS)

<br>

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS PIONEER BANK AND PIONEER BANCORP INC.'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. 12(b)(6)**

<br>

**DLA PIPER LLP (US)**

Robert J. Alessi
Jeffrey D. Kuhn
677 Broadway – Suite 1205
Albany, New York 12207-2996
Tel.: (518) 788-9710
Fax: (518) 935-9767
robert.alessi@us.dlapiper.com
jeffrey.kuhn@us.dlapiper.com

*Attorneys for Defendants Pioneer Bank and
Pioneer Bancorp Inc.*

October 1, 2020

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

APPLICABLE ALLEGATIONS FOR PURPOSES OF THIS MOTION ....................................3

    A.    Cloud Opens Account 2440 at Pioneer Bank as a General Deposit and
Non-Trust Account ......................................................................................................3

    B.    Southwestern Payroll Service, Inc.'s Use of Account 2440 at
Pioneer Bank ...............................................................................................................5

    C.    Pioneer Bank Sets Off Funds from Cloud's Account 2440 ............................6

ARGUMENT ..................................................................................................................................7

I.    Motion to Dismiss Standard ................................................................................................7

II.    Plaintiff's Count II Does Not Contain Factual Allegations Supporting
Plaintiff's Conclusory Assertion that Pioneer Bank Knew or Was on
Notice that Account 2440 Contained Tax Funds at the Time of the
Set Off ..................................................................................................................................7

    A.    Pioneer Bank's Set Off from Account 2440 Is Governed by New
York State Law ...........................................................................................................7

    B.    Pioneer Bank's Set Off from Account 2440 Was Presumptively
Valid Under New York Law Because Account 2440 Was a
General Account ..........................................................................................................8

    C.    The Complaint Does Not Contain Any Factual Allegations Showing
that Pioneer Bank Knew or Had Notice That Account 2440
Contained Tax Funds at the Time of the Set Off .......................................................11

III.    Plaintiff's Third-Party Beneficiary Claim (Count III) Must be Dismissed
Because Neither Pioneer Bank Nor PBI Are Parties to the Contracts the
Plaintiff Is Attempting to Enforce Against Them ................................................................14

    A.    Plaintiff's Third-Party Beneficiary Claim is Governed by New
York State Law ...........................................................................................................15

    B.    Plaintiff Cannot Bring a Third-Party Beneficiary Claim Against
Pioneer Bank and PBI Based on Contracts that Neither Pioneer Bank
Nor PBI Were Parties To ............................................................................................16

CONCLUSION ...............................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. NCL America, LLC*, 174 F. Supp. 3d 982 (N.D. Ohio 2016) ...........................................13

*Alliancewall Corp. v. M.D. Bartholomew, Inc.*, No. 86-cv-1211,
    1989 WL 16066 (N.D.N.Y. Feb. 21, 1989) ...............................................................17

*In re Anton*, 146 B.R. 509 (E.D.N.Y. 1992) ....................................................................15

*In re Applied Logic Corp.*, 576 F.2d 952 (2d Cir. 1978) ...........................................8, 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................7

*BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685 (2d Cir. 1993) ................................17

*Bayda v. Howmet Castings & Services*, No. 2:18-cv-17419,
    2020 WL 4382283 (D.N.J. July 31, 2020) ................................................................12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................7

*Ben Tom Corp. v. Ohio Dep't of Natural Resources*, No. 89AP-962,
    1990 WL 86839 (Ohio Ct. App. 10th Dist. June 26, 1990) ....................................18

*In re Bennett Funding Group, Inc.*, 146 F.3d 136 (2d Cir. 1998) ..................8, 9, 10, 11

*Bhatti v. Federal National Mortgage Assoc.*, No. 1:16-cv-257,
    2018 WL 357292 (N.D.N.Y. Jan. 18, 2018) .......................................................17, 18

*Black Car and Livery Ins., Inc. v. H & W Brokerage, Inc.*,
    28 A.D.3d 595 (2d Dep't 2006) ...............................................................................17

*Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314 (1983) ..........17, 18

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ......................................3

*Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014) .............................16

*Collier v. Annucci*, No. 9:18-CV-0990,
    2019 WL 3892817 (N.D.N.Y. July 23, 2019) ....................................................12, 13

*Daly v. Atlantic Bank of New York*, 201 A.D.2d 128 (1st Dep't 1994) ....................9, 11

*DiFolco v. MSNBC Cable L.L.C*, 622 F.3d 104 (2d Cir. 2010) ................................3, 6

*DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547 (S.D.N.Y. 2018) ...................................12, 13

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*,
    66 N.Y.2d 38 (1985) ...................................................................................................................18

*In re Frigitemp Corp.*, 34 B.R. 1000 (S.D.N.Y. 1983),
    *aff'd*, 753 F.2d 230 (2d Cir. 1985) ..............................................................................6, 9, 11

*Gerrity Co., Inc. v. Bonacquisti Const. Corp.*, 136 A.D.2d 59 (3d Dep't 1988) ....................10, 11

*Gonzalez v. Volvo of Am. Corp.*, 752 F.2d 295 (7th Cir. 1985)....................................................16

*In re Goodson Steel Corp.*, 488 F.2d 776 (5th Cir. 1974) ............................................9, 10, 11, 14

*Gould v. Artisoft, Inc.*, 1 F.3d 544 (7th Cir. 1993)........................................................................16

*Hoelzer v. City of Stamford, Conn.*, 722 F. Supp. 1106 (S.D.N.Y. 1989) ......................................8

*Immaculate Heart Central School v. NYS Public High School Athletic Ass'n*,
    797 F. Supp. 2d 204 (N.D.N.Y. 2011) ...............................................................................12, 14

*Interallianz Bank AG v. Nycal Corp.*, No. 93-cv-5024,
    1995 WL 406112 (S.D.N.Y. July 7, 1995) .........................................................................17, 18

*In re Lehman Bros. Holdings Inc.*, 439 B.R. 811 (S.D.N.Y. 2010)........................................8, 9, 10

*MCI Telecom. Corp. v. John Mezzalingua Associates, Inc.*,
    921 F. Supp. 936 (N.D.N.Y. 1996) ............................................................................................17

*Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*,
    No. 07-cv-6959, 2010 WL 4968072 (S.D.N.Y. Dec. 6, 2010)..................................................12

*Peoples Westchester Sav. Bank v. F.D.I.C.*, 961 F.2d 327 (2d Cir. 1992) ......................................9

*Pereira v. United Jersey Bank, N.A.*, 201 B.R. 644 (S.D.N.Y. 1996) .............................................8

*Raymond Concrete Pile Co. v. Federal Bank & Trust Co.*, 288 N.Y. 452 (1942) .................10, 11

*Renaissance Housing Development Fund Corp. v. Phoenix Constr. Inc.*,
    136 A.D.3d 605 (1st Dep't 2016) ..............................................................................................17

*S. Kane & Son Profit Sharing Trust v. Marine Midland Bank*,
    No. 95-7058, 1996 WL 325894 (E.D. Pa. June 13, 1996)....................................................9, 11

*S.W. v. Clayton County Public Schools*, 185 F. Supp. 3d 1366 (N.D. Ga. 2016)..........................13

*Sampson v. Washington Mut. Bank*, 453 Fed. Appx. 863 (11th Cir. 2011)....................................3

*Schoeps v. Museum of Modern Art*, 594 F. Supp. 2d 461 (S.D.N.Y. 2009) ...................................8

*Southwestern Payroll Service, Inc. v. Pioneer Bancorp Inc., et al.*
(N.D.N.Y. Case No. 1:19-cv-1349 (FJS/CFS)) ....................................15

*In re Szymanski*, 413 B.R. 232 (E.D. Pa. 2009) ....................................8

*U.S. v. Industrial Crane & Mfg. Corp.*, 492 F.2d 772 (5th Cir. 1974) ....................................15, 17

*U.S. v. Jackson*, 572 F. Supp. 181 (W.D. Mich. 1983) ....................................16

*U.S. v. Mann* (N.D.N.Y. Case No. 1:20-cr-199 (LEK)) ....................................15

*U.S. v. State Farm Mut. Auto. Ins. Co.*, 936 F.2d 206 (5th Cir. 1991) ....................................16

*U.S. v. State Farm Mut. Auto. Ins. Co.*, No. 90-cv-1423,
1992 WL 229120 (D. Kan. Sept. 11, 1992) ....................................16

*U.S. v. Wood*, 877 F.2d 453 (6th Cir. 1989) ....................................15

*Victory State Bank v. EMBA Hylan, LLC*, 169 A.D.3d 963 (2d Dep't 2019) ....................................17, 18

*Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50 (2d Cir. 1984) ....................................16

*Western Assur. Co. v. Genesee Valley Trust Co.*, 171 F.2d 664 (2d Cir. 1948) ....................................10, 11

*Ziemba v. Incipio Technologies, Inc.*, No. 13-cv-5590,
2014 WL 4637006 (D.N.J. Sept. 16, 2014) ....................................13

**Statutes**

18 U.S.C. § 1960 ....................................15

18 U.S.C. §§ 1961, *et seq.* ....................................15

26 U.S.C. § 7501 ....................................1, 11

N.Y. Banking Law § 641 ....................................15

N.Y. Banking Law § 643 ....................................15

N.Y. Debtors & Creditors Law § 151 ....................................8

**Other Authorities**

31 CFR § 1010.100(ff) ....................................4

Fed. R. Civ. P. 12(b)(6) ....................................1, 3, 7, 19

## PRELIMINARY STATEMENT

Defendants Pioneer Bank and Pioneer Bancorp, Inc. ("PBI") submit this memorandum in support of their motion to dismiss the Complaint (dkt. no. 1) filed by Plaintiff United States of America ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6). Pioneer Bank and PBI move to dismiss both claims in the Complaint asserted against them (Counts II and III).[1]

This case is about Pioneer Bank's September 4, 2019 set off from an account ("Account 2440") held by defendant Cloud Payroll, LLC ("Cloud") to cover debts owed to Pioneer Bank.[2] Pioneer Bank's set off from Account 2440 was valid under the governing account agreement and New York State law. When Cloud opened Account 2440, it represented in writing to Pioneer Bank that Cloud was neither a third-party payment processor, money services business, nor a money transmitter. More importantly, Account 2440 is a general business deposit account and not any kind of special purpose or trust account. A "presumption" thus arose under New York State law that Account 2440 was not a trust fund and that there were no third-party beneficiaries entitled to any portion of the funds in Account 2440. That "presumption continued until annulled by knowledge or adequate notice to the contrary." Based on that presumption, Pioneer Bank had the right to set off funds in Account 2440 to cover debts owed to it.

The Complaint asserts two claims against Pioneer Bank and PBI seeking "return" of the funds Pioneer Bank set off from Account 2440.

First, Plaintiff asserts in Count II that the funds in Account 2440 did not belong to Cloud but were payroll taxes subject to a statutory trust imposed by 26 U.S.C. § 7501 and ineligible to

---

[1] Count I of the Complaint is asserted only against defendant Cloud Payroll, LLC, and is not a subject of this motion.

[2] The Complaint misidentifies the account as having a "number ending in 4220." Complaint ¶ 10. No such account exists, and this appears to be a typographical error by Plaintiff. The account referred to in the Complaint has an account number ending in 2440 and is referred to here as "Account 2440".

be set off.  Because Account 2440 is a general deposit account, however, Plaintiff has the burden of establishing both (1) that the funds in Account 2440 were withheld taxes, *and* (2) that Pioneer Bank knew or had notice of that fact at the time of the set off.  The Complaint does not contain any factual allegations satisfying the critical knowledge/notice element.  Instead, the Complaint merely asserts in conclusory fashion that Pioneer Bank "knew or was on notice" that Account 2440 contained tax funds at the time of the set off.  That threadbare and formulaic recitation is not supported by *any* factual allegations and does not satisfy the critical knowledge/notice element of Plaintiff's claim or the federal pleading standards under *Twombly* and *Iqbal*.  Accordingly, Plaintiff's Count II fails to state a claim as a matter of law and must be dismissed.

Second, Plaintiff asserts in Count III that the funds in Account 2440 included "non-trust fund taxes" that were subject to certain contracts intended "to ensure timely payment" of those taxes to the Internal Revenue Service ("IRS") and other taxing authorities.  Plaintiff asserts that the IRS was an "intended third-party beneficiary" of those contracts and may "enforce" those contracts against Pioneer Bank and PBI to compel them to "return" the non-trust fund taxes set off from Account 2440 to the IRS.  But the Complaint concedes that neither Pioneer Bank nor PBI are parties to the contracts that Plaintiff seeks to "enforce" against them.  A third-party beneficiary claim can only be brought against a party to the underlying contract since a non-party has no contractual duties to perform.  Consequently, Plaintiff cannot bring a third-party beneficiary claim against Pioneer Bank or PBI to enforce contracts that neither Pioneer Bank nor PBI were parties to in the first place.  Plaintiff's Count III third-party beneficiary claim against Pioneer Bank and PBI fails as a matter of law and must be dismissed.

Based on the foregoing, and those additional reasons articulated more fully below, the two causes of action in the Complaint asserted against Pioneer Bank and PBI (Count II and Count III)

fail to state a claim as a matter of law.  Accordingly, the Complaint must be dismissed in its entirety as against Pioneer Bank and PBI pursuant to Fed. R. Civ. P. 12(b)(6) and with prejudice.

<u>**APPLICABLE ALLEGATIONS FOR PURPOSES OF THIS MOTION**</u>

For purposes of this Rule 12(b)(6) motion, the Court accepts the factual allegations set forth in the Complaint as true.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Pioneer Bank and PBI do not admit to the truth of any of the allegations set forth in the Complaint in submitting this motion.

**A.   <u>Cloud Opens Account 2440 at Pioneer Bank as a General Deposit and Non-Trust Account</u>**

Defendant Pioneer Bank is a bank doing business in Albany, New York.  Complaint ¶ 2. Defendant PBI is a bank incorporated in Maryland with a principal place of business in Albany, New York.  *Id.* ¶ 3.

Cloud is a business operated by Michael T. Mann.  Complaint ¶¶ 4, 8.

On February 26, 2019, Mr. Mann, in his capacity as "Member" of Cloud, opened a general and unrestricted business deposit checking account for Cloud at Pioneer Bank ("Account 2440"). *See* February 26, 2019 Account Agreement for Account 2440 ("Account Agreement," attached as Exhibit A to the accompanying Declaration of Robert J. Alessi ("Alessi Decl.," dated October 1, 2020)).[3]  When it opened Account 2440, Cloud executed an Account Agreement stating that

---

[3]   "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  *Id.*; *see Sampson v. Washington Mut. Bank*, 453 Fed. Appx. 863, 866 (11th Cir. 2011) (noting that on a Rule 12(b)(6) motion to dismiss, a district court "may consider documents attached to a defendant's motion if those documents are 'relationship-forming contracts [that] are central to a plaintiff's claim").

Here, because Account 2440 – inaccurately referred to as the "Pioneer tax settlement account" throughout the Complaint – is the primary subject of the Complaint, the Account Agreement executed by Cloud when it opened Account 2440 is the "relationship-forming contract" between Cloud and

Account 2440 would be used as a general "business" account. *Id.* Cloud did not check the boxes on the Account Agreement necessary to establish Account 2440 as any type of special purpose or trust account. *Id.* In other words, Cloud represented to Pioneer Bank that Account 2440 would not be used to deposit trust funds – *e.g.*, funds withheld from third parties to pay taxes. *Id.* The characterization of Account 2440 as a "tax settlement account" in the Complaint is inaccurate and contradicted by unambiguous documentary evidence.

The Account Agreement for Account 2440 incorporated an agreement titled "Terms and Conditions of Your Account" ("Terms & Conditions," attached as Exhibit B to the Alessi Decl.). Alessi Decl., Exh. A. Section 2 of the Terms & Conditions states that it is "subject to applicable federal laws" and "the laws of the state of New York." Section 15 of the Terms & Conditions, titled "Setoff," states: "[Cloud] agree[s] that [Pioneer Bank] may (when permitted by law) set off the funds in [Account 2440] against any due and payable debt any of you owe us now or in the future."

In the "'For Profit' Commercial Customer Due Diligence (CDD) Information Sheet" attached to the Account Agreement for Account 2440 ("Due Diligence Information Sheet"), Cloud certified that it was not a "third party payment processor," which the form defined as "a business that provides payment processing services to merchants and other business entities." Alessi Decl., Exh. A. The Due Diligence Information Sheet stated that "Pioneer Bank is not equipped to maintain accounts for businesses of this nature [*i.e.*, third-party payment processors]." *Id.*

Cloud also certified in the Due Diligence Information Sheet that it was not a "money services business" as defined in 31 CFR § 1010.100(ff), which includes a "money transmitter" that

_____

Pioneer Bank with respect to Account 2440 and thus "integral" to the Complaint. *See id.* Accordingly, the Court may consider the Account Agreement (and the "Terms & Conditions" incorporated into the Account Agreement) on this motion to dismiss.

"engages as a business in accepting currency or funds and transmits such currency or funds by any means through a financial agency or institution." *Id.*

When it opened Account 2440 on February 26, 2019, Cloud certified both (1) "the accuracy of the information" it provided in the Account Agreement and (2) that the information it provided in the Due Diligence Information Sheet was "complete and correct." *Id.*

**B.  Southwestern Payroll Service, Inc.'s Use of Account 2440 at Pioneer Bank**

In addition to operating Cloud, Mr. Mann was also the majority owner of Southwestern Payroll Service Inc. ("SWP"), which is an Oklahoma payroll support company that, among other things, contracts with employers to collect, process, and remit payroll taxes to taxing authorities. Complaint ¶¶ 8, 12-13.  SWP's business operated by withdrawing payroll tax funds from its employer-client's bank accounts and placing those funds in an account controlled by SWP at Prosperity Bank in Tulsa, Oklahoma.  *Id.* ¶ 15.  Thereafter, National Payment Corporation ("NatPay"), an ACH servicer that contracted with SWP, would transfer the payroll tax funds first to an account at First Premier Bank in Sioux Falls, South Dakota ("First Premier Account"), and then to Cloud's Account 2440 at Pioneer Bank.  *Id.*  Cloud would then instruct NatPay to transfer the payroll tax funds out of Account 2440 and *back* to the First Premier Account, and then onto the appropriate state and federal taxing authorities.  *Id.*  The Complaint does not explain why SWP and NatPay did not merely transfer the payroll tax funds to the taxing authorities directly from the First Premier Account.  The Complaint also does not explain why the alleged payroll tax funds were apparently unnecessarily detoured through Account 2440 at Pioneer Bank when Cloud had no apparent relationship with SWP's employer-clients.

## C. **Pioneer Bank Sets Off Funds from Cloud's Account 2440**

On or after August 30, 2019, Pioneer Bank set off funds from Account 2440 to apply towards debts owed to Pioneer Bank.[4]  Complaint ¶ 19.  The funds Pioneer Bank set off from Cloud's Account 2440 allegedly included $7.3 million in payroll tax funds collected by SWP from its employer-clients (and thereafter transferred to Account 2440 by NatPay) that were intended to be paid to the IRS.[5]  *Id.* ¶ 20.

The Complaint alleges, again in a conclusory fashion, that at the time Pioneer Bank set off funds from Account 2440, Pioneer Bank "knew or was on notice" that the funds in Account 2440 "were tax payments intended for taxing authorities, including the IRS."  *Id.* ¶ 36.

---

[4]  The Complaint alleges that Pioneer Bank set off funds from Account 2440 "to apply towards debts allegedly owed to Pioneer by Mann."  Complaint ¶ 19.  The Complaint does not specify what "debts" were the basis of the set off.  *Id.* ¶ 17.  "Debts" to a bank include overdrafts.  *In re Frigitemp Corp.*, 34 B.R. 1000, 1018-19 (S.D.N.Y. 1983) (holding that bank's set off to cover an account holder's "debt to [the bank] (the overdraft)" was "lawful"), *aff'd*, 753 F.2d 230 (2d Cir. 1985).

On September 4, 2020, Pioneer Bank set off funds from Account 2440 to partially cover overdrafts/negative net balances in accounts held by entities controlled by Mr. Mann that resulted from Bank of America returning/calling back $15.6 million in checks on August 30, 2019, that Mr. Mann had deposited into and then withdrawn from accounts at Pioneer Bank the day before.  Pioneer Bank's set off/account overdraft recovery had nothing to do with any loans as the Complaint incorrectly suggests.

The Complaint alleges that Pioneer Bank "believed Mann to be in default of a $42 million revolving line of credit it had extended to Mann on August 12, 2019, as collateral for which Mann had pledged bank accounts, including [Account 2440]."  Complaint ¶ 17.  However, as demonstrated by the Loan and Security Agreement for the $42 million revolving line of credit, the borrowers were Valuewise Corporation, Cloud, and seven other affiliated companies; Mr. Mann was a guarantor but not a borrower.  *See* Alessi Decl., Exh. C and D (The Court can consider the Loan and Security Agreement (and related Unlimited Guaranty by Mr. Mann) on this motion to dismiss because it is effectively incorporated by reference in paragraph 17 of the Complaint.  *See DiFolco*, 622 F.3d at 111.).  While this error is worthy of correction, it is not critical to the instant motion to dismiss.

[5]  The Complaint also alleges that the funds Pioneer Bank set off from Account 2440 included at least $6.6 million in payroll taxes transferred from NatPay on behalf of payroll processing companies other than SWP but "it is unknown at this time whether the wages associated with those payroll taxes were paid and, of that amount, what portion constituted trust funds."  Complaint ¶ 22.

## ARGUMENT

I.   **Motion to Dismiss Standard**

A motion to dismiss should be granted where a complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Though the Court must accept factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555).  Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a viable claim.  *Id*.  Thus, a complaint must contain more than "'naked assertions' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Likewise, allegations which are no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not" survive a motion to dismiss (*Twombly*, 550 U.S. at 555) as they are "not entitled to the assumption of truth" otherwise applied on a motions to dismiss.  *Iqbal*, 556 U.S. at 679.

II.  **Plaintiff's Count II Does Not Contain Factual Allegations Supporting Plaintiff's Conclusory Assertion that Pioneer Bank Knew or Was on Notice that Account 2440 Contained Tax Funds at the Time of the Set Off**

### A.  **Pioneer Bank's Set Off from Account 2440 Is Governed by New York State Law**

The Terms & Conditions governing Account 2440 state that the parties' rights under that agreement, including Pioneer Bank's set off rights, are subject to the "laws of the state of New York."  *See* Alessi Decl., Exh. B at 1.  Consequently, Pioneer Bank's set off from Account 2440 is governed by New York State law.  *See In re Lehman Bros. Holdings Inc.*, 439 B.R. 811, 824 n.12 (S.D.N.Y. 2010).

Pioneer Bank's right to set off funds in Account 2440 is also governed by New York State law because the account is located in New York State.  *See Schoeps v. Museum of Modern Art*, 594 F. Supp. 2d 461, 468 (S.D.N.Y. 2009) ("In disputes over transfers of personal property, interest analysis will often lead to the conclusion that the law of the forum where the transfer took place applies …"); *Hoelzer v. City of Stamford, Conn.*, 722 F. Supp. 1106, 1112 (S.D.N.Y. 1989) ("Under New York law, personal property is governed by the law of the state where the property is located."); *see also In re Szymanski*, 413 B.R. 232, 245 (E.D. Pa. 2009) (accepting as "correct" the parties' reference "to Pennsylvania law in addressing the bank's right of setoff" because of "the location of the deposit accounts in Pennsylvania"); Complaint ¶¶ 2-3.

**B.  Pioneer Bank's Set Off from Account 2440 Was Presumptively Valid Under New York Law Because Account 2440 Was a General Account**

There is "no question that New York has long recognized a common law right of setoff." *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 139 (2d Cir. 1998) ("*Bennett II*") (citing *Straus v. Tradesmen's Nat'l Bank*, 122 N.Y. 379 (1890)).  "New York also has codified the right to setoff" at N.Y. Debtors & Creditors Law § 151.  *Id.*  "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the 'absurdity of making A pay B when B owes A.'"  *Pereira v. United Jersey Bank, N.A.*, 201 B.R. 644, 660-661 (S.D.N.Y. 1996).

The right of a bank to set off (including recovery for account overdrafts) is well established in the Second Circuit, which has admonished that the "rule allowing setoff … is not one that courts are free to ignore when they think application would be 'unjust'" because "creditors particularly banks, have long acted in reliance upon it."  *In re Applied Logic Corp.*, 576 F.2d 952, 957-958 (2d Cir. 1978).  Indeed, courts have repeatedly underscored the importance of set off rights to the integrity of the financial system, to banks, to borrowers, and even to depositors, who depend on

the soundness of their banks. *See, e.g., S. Kane & Son Profit Sharing Trust v. Marine Midland Bank*, No. 95-7058, 1996 WL 325894, at *4 n.5 (E.D. Pa. June 13, 1996) (applying New York law: "Compelling reasons exist … for protecting the established right of banks to set off deposits against overdrafts.") (quoting *Frigitemp*, 34 B.R. at 1020).

"Generally, in the absence of agreement to the contrary, a bank is entitled to apply a deposit to the payment of a debt due it by the depositor." *Daly v. Atlantic Bank of New York*, 201 A.D.2d 128, 129 (1st Dep't 1994). "Ordinarily, funds in a general deposit account can be used to setoff debts owed to the bank because when a depositor deposits funds into a general account he parts with title to the funds in exchange for a debt owed to him by the bank, thereby establishing a standard debtor-creditor relationship." *Bennett II*, 146 F.3d at 139; *In re Goodson Steel Corp.*, 488 F.2d 776, 779 (5th Cir. 1974) ("When money or its equivalent is deposited in a bank without any special agreement, the law implies that it is to be mingled with the other funds of the bank, the relation of debtor and creditor is created between the bank and the [account-holder], and the deposit is general. In such a transaction the bank becomes the owner of the fund."). Thus, "under New York common law … funds within a general deposit account are subject to setoff." *In re Lehman Bros. Holdings Inc.*, 439 B.R. at 824. In contrast, "funds within a 'special purpose' account are not subject to setoff." *Id.*

"As a general matter, a strong presumption exists under New York law that a deposit account is a general account and not a special purpose account." *Lehman Bros.*, 439 B.R. at 824; *Bennett II*, 146 F.3d at 140; *Peoples Westchester Sav. Bank v. F.D.I.C.*, 961 F.2d 327, 332 (2d Cir. 1992) (noting "strong presumption" that an account "was intended to be a general deposit"). As a result, and critically, when a deposit is made in a general or personal account, a "presumption" arises, upon which a bank is "entitled to rely, that the fund was not a trust fund and that there was

no beneficiary entitled to any portion thereof and that presumption continued until annulled by knowledge or adequate notice to the contrary." *Gerrity Co., Inc. v. Bonacquisti Const. Corp.*, 136 A.D.2d 59, 63 (3d Dep't 1988) (Levine, J.) (quoting *Raymond Concrete Pile Co. v. Federal Bank & Trust Co.*, 288 N.Y. 452, 459 (1942)); *see Western Assur. Co. v. Genesee Valley Trust Co.*, 171 F.2d 664, 666 (2d Cir. 1948) (quoting same language from *Raymond Concrete*). "The federal courts have long been in agreement with this principle. 'The presumption is that deposits of money in a bank give rise to a relation of debtor and creditor, and not to one of trustee and beneficiary.'" *Goodson Steel*, 488 F.2d at 779 (quoting *In re Kountze Bros.*, 104 F.2d 157, 157 (2d Cir. 1939)).

Here, Pioneer Bank set off funds from Account 2440 to apply towards debts owed to it. Complaint ¶ 19. The Account Agreement establishes that Account 2440 is a general deposit account and was not designated as a special purpose or trust account. *See* Alessi Decl., Exh. A. The Account Agreement thus confirms the "strong presumption" under New York law that Account 2440 "is a general account and not a special purpose account." *Lehman Bros.*, 439 B.R. at 824; *Bennett II*, 146 F.3d at 140. Because Account 2440 is a general deposit account, the funds in Account 2440 were subject to Pioneer Bank's contractual and common law set off rights. *Lehman Bros.*, 439 B.R. at 824. In exercising its set off rights, Pioneer Bank was "entitled to rely" on the "presumption" that Account 2440 "was not a trust fund and that there was no beneficiary [including the government] entitled to any portion" of the funds in Account 2440. *Raymond Concrete*, 288 N.Y. at 459; *Gerrity*, 136 A.D.2d at 63; *Western Assur.*, 171 F.2d at 666.

Consequently, Pioneer Bank's set off from Account 2440 to cover debts owed to it was presumptively valid under New York State law. *See Bennett II*, 146 F.3d at 139; *Daly*, 201 A.D.2d at 129.

**C.** **The Complaint Does Not Contain Any Factual Allegations Showing that Pioneer Bank Knew or Had Notice That Account 2440 Contained Tax Funds at the Time of the Set Off**

As noted, the "presumption" that funds in a general deposit account are not trust funds and are thus subject to a bank's set off rights continues "until annulled by knowledge or adequate notice to the contrary." *Raymond Concrete*, 288 N.Y. at 459; *Gerrity*, 136 A.D.2d at 63; *Western Assur.*, 171 F.2d at 666. As a result, "[e]ven if funds deposited in a general account can be identified as [tax] trust funds, another critical inquiry is whether the bank became the transferee of such [tax] trust funds with notice of their character." *Goodson Steel*, 488 F.2d at 780-781. Where, as here, a party challenges a bank's set off from a general account by asserting that the account contained taxes subject to the statutory trust imposed by 26 U.S.C. § 7501, that party has "the burden to show that the funds deposited … were withheld tax funds *and that [the bank] had notice that this was so.*" *Id.* at 781 (emphasis added).[6]

Here, because Account 2440 was a general deposit account, Plaintiff cannot prevail on its claim seeking return of the funds set off from Account 2440 unless Plaintiff can establish the "critical" element that Pioneer Bank had knowledge or notice that Account 2440 contained withheld taxes at the time of the set off. *Id.* The Complaint does not contain any factual allegations satisfying that critical knowledge/notice element. Instead, the Complaint contains only the following conclusory assertion:

> On information and belief, at the time it seized the funds, Pioneer knew or was on notice that the funds it seized from [Account 2440] were tax payments intended for taxing authorities, including the IRS.

---

[6] The knowledge/notice element of Plaintiff's claim, even if it had been properly alleged with sufficient facts, does not support a claim against a bank where, as here, a bank has exercised its depository rights to recover an overdraft. *See S. Kane*, 1996 WL 325894, at *4, n.5 ("It is not entirely clear whether recovery of an overdraft paid by the bank should be considered a 'set-off' because, in some instances, the law distinguishes between account set-offs to recover routine overdrafts and account set-offs to reduce a separate debt, such as a note, owed by the account holder to the bank.") (citing *Frigitemp*, 34 B.R. at 1018)).

Complaint ¶ 36. This single allegation is exactly the type of "threadbare" and "formulaic recitation" of the critical knowledge/notice element that is insufficient to withstand a motion to dismiss under *Twombly* and *Iqbal*. *See Immaculate Heart Central School v. NYS Public High School Athletic Ass'n*, 797 F. Supp. 2d 204, 208 (N.D.N.Y. 2011) (Hurd, J.) ("a formulaic recitation of the elements of a cause of action will not do") (quoting *Twombly*, 550 U.S. at 557); *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 554 (S.D.N.Y. 2018) ("a pleading that merely recites conclusory allegations or a 'formulaic recitation of the elements of a cause of action' fails to state a claim") (quoting *Iqbal*, 556 U.S. at 678).

*Iqbal* itself holds that where, as here, a defendant's "particular state of mind is a necessary element of a claim, [a party's] pleading of that state of mind must be plausible *and* supported by factual allegations." *Collier v. Annucci*, No. 9:18-CV-0990, 2019 WL 3892817, at *5 (N.D.N.Y. July 23, 2019) (bracketed text original, emphasis added) (citing *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 278 (S.D.N.Y. 2013) (quoting *Iqbal*, 556 U.S. at 686-687)). Thus, where a defendant's knowledge is an element of a claim, that element will not be satisfied if a complaint merely alleges a defendant's knowledge in conclusory fashion without providing "any facts to substantiate [those] allegations about [the defendant's] knowledge." *Bayda v. Howmet Castings & Services*, No. 2:18-cv-17419, 2020 WL 4382283, at *6 (D.N.J. July 31, 2020); *Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*, No. 07-cv-6959, 2010 WL 4968072, at *6 (S.D.N.Y. Dec. 6, 2010) (" … Plaintiffs provide only a 'formulaic recitation' of the knowledge element of a contributory infringement. Plaintiffs therefore have failed to allege sufficient facts to satisfy the knowledge element of a contributory infringement, and their contributory liability claims must be dismissed.") (internal citation to *Twombly* omitted); *Ziemba v. Incipio Technologies, Inc.*, No. 13-cv-5590, 2014 WL 4637006, at *3 (D.N.J. Sept. 16, 2014) (" … Plaintiff's use of the word

'knowledge' without more, is entirely conclusory and thus does not benefit from the presumption of truth.").

The requirement that a complaint contain factual allegations as opposed to a mere "formulaic recitation" also applies where "notice" to the defendant is an element of a cause of action. *Allen v. NCL America, LLC*, 174 F. Supp. 3d 982, 988 (N.D. Ohio 2016) ("Plaintiff's conclusory statements of the element of notice, without sufficient factual matter is not enough"); *S.W. v. Clayton County Public Schools*, 185 F. Supp. 3d 1366, 1375 (N.D. Ga. 2016) (" … merely reciting the actual notice element of a Title IX claim is not sufficient.") (citing *Twombly*, 550 U.S. at 555).

The bare assertion in Paragraph 36 of the Complaint that, "upon information and belief, at the time [of the set off], Pioneer knew or was on notice that the funds it seized from [Account 2440] were tax payments intended for taxing authorities, including the IRS" is the epitome of a "formulaic recitation" of a critical element that "fails to state a claim." *DigitAlb*, 284 F. Supp. 3d at 554. The Complaint does not contain *any* "factual allegations" supporting the conclusory assertion that Pioneer Bank "knew or was on notice" that the funds it set off from Account 2440 were "tax payments." *See Collier*, 2019 WL 3892817, at *5. For example, the Complaint does not allege any conduct by Pioneer Bank or anyone else that would demonstrate that Pioneer Bank had such knowledge. And while the Complaint alternatively asserts that Pioneer Bank was "on notice" that Account 2440 contained "tax payments," there are no factual allegations stating how Pioneer Bank was notified, when that notice occurred, who provided that notice, or the form that notice took. There are simply no factual allegations in the Complaint substantiating Plaintiff's conclusory assertion that Pioneer Bank knew or was on notice that Account 2440 contained "tax payments" at the time of the set off.

13

Because Account 2440 was a general deposit account, even assuming, *arguendo*, that Account 2440 contained "tax payments" as Plaintiff alleges, a "critical" element of Plaintiff's Count II is a demonstration that Pioneer Bank received "notice that this was so" prior to the set off. *Goodson Steel*, 488 F.2d at 780-781. The formulaic and conclusory assertion in the Complaint that Pioneer had such knowledge or notice but without any substantiating or supporting factual allegations "will not do" to satisfy that critical element. *See Immaculate Heart Central School*, 797 F. Supp. 2d at 208. Accordingly, Plaintiff's Count II seeking "return" of funds Pioneer Bank set off from Account 2440 fails as a matter of law and must be dismissed.

III.     **Plaintiff's Third-Party Beneficiary Claim (Count III) Must be Dismissed Because Neither Pioneer Bank Nor PBI Are Parties to the Contracts the Plaintiff Is Attempting to Enforce Against Them**

Plaintiff asserts in Count III that contracts existed (1) between "payroll companies" (including SWP) and their employer-clients, and (2) between payroll companies (including SWP) and Cloud – and that the purpose of both sets of contracts "was to ensure timely payment" of "non-trust fund taxes" to the IRS.[7] Complaint ¶¶ 33-34. The Complaint asserts that the IRS was an "intended third-party beneficiary" of those contracts, and that Plaintiff may "enforce" those contracts against Pioneer Bank and PBI to compel them to "return" non-trust fund taxes purportedly set off from Account 2440. But the Complaint concedes that neither Pioneer Bank nor PBI are parties to the contracts that Plaintiff seeks to "enforce" against them. The law is clear that a third-party beneficiary claim can only be brought against a party to the underlying contract. Pioneer Bank and PBI were not parties to any contracts pertaining to the way third-party tax funds collected by SWP or Cloud were handled, processed, or paid to the IRS. Consequently, Plaintiff

---

[7]   The Complaint does not specifically identify, much less attach as an exhibit, the contracts that Plaintiff is purportedly relying upon.

cannot bring a third-party beneficiary claim against Pioneer Bank or PBI to enforce contracts that neither Pioneer Bank nor PBI were parties to in the first place.  Accordingly, Plaintiff's third-party beneficiary claim fails to state a claim as a matter of law and must be dismissed.[8]

### A.   Plaintiff's Third-Party Beneficiary Claim is Governed by New York State Law

When the federal government brings a claim to enforce its alleged rights as a third-party beneficiary to a contract – including claims to recover purported taxes – the claim is governed by state law.   *U.S. v. Wood*, 877 F.2d 453, 457 (6th Cir. 1989) (applying Kentucky law to government's claim to recover taxes as third-party beneficiary to property settlement agreement); *U.S. v. Industrial Crane & Mfg. Corp.*, 492 F.2d 772, 774 (5th Cir. 1974) (applying Alabama law to government's claim to recover taxes as third-party beneficiary of stock purchase agreement); *see U.S. v. State Farm Mut. Auto. Ins. Co.*, 936 F.2d 206, 209 (5th Cir. 1991) (applying Mississippi law to government's third-party beneficiary claim); *U.S. v. State Farm Mut. Auto. Ins. Co.*, No. 90-cv-1423, 1992 WL 229120, at *2 (D. Kan. Sept. 11, 1992) ("Whether the United States is a

---

[8]   The Court should be aware of SWP's role in causing the issues described in the Complaint.  At all times relevant to the Complaint, Mr. Mann indirectly owned a majority of SWP and served as SWP's president.  *See* Pioneer Bank and PBI's Amended Answer, Affirmative Defenses, and Counterclaims/Cross-Claims ¶¶ 98-99, 103, 134, 174 ("Pioneer Answer," filed July 30, 2020), dkt. no. 74 in *Southwestern Payroll Service, Inc. v. Pioneer Bancorp Inc., et al.* (N.D.N.Y. Case No. 1:19-cv-1349 (FJS/CFS)).  On August 12, 2020, Mr. Mann pled guilty to multiple counts of bank fraud, wire fraud conspiracy, aggravated identity theft, and false tax filings.  *See* Plea Agreement (filed August 12, 2020), dkt. no. 30 in *U.S. v. Mann* (N.D.N.Y. Case No. 1:20-cr-199 (LEK)).  SWP was an active participant in Mr. Mann's crimes and fraud, and Mr. Mann committed numerous acts of criminal bank and wire fraud in his capacity as SWP's president.  Pioneer Bank has asserted counterclaims against SWP for fraud and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*  Pioneer Answer ¶¶ 122-235.  SWP's predicate crimes under RICO include bank fraud, wire fraud, and operating as an illegal and unlicensed money transmitting business in violation of 18 U.S.C. § 1960.  *Id.* ¶ 227(e, g, j).  Any alleged damages to Plaintiff would have been prevented or mitigated if SWP had not committed criminal fraud or operated as an illegal money transmitting business (for example, if SWP, as a money transmitter, was properly licensed and bonded under N.Y. Banking Law §§ 641 and 643).  *See, e.g., In re Anton*, 146 B.R. 509, 514 (E.D.N.Y. 1992) (allowing bank set off from general deposit account that contained trust funds because account holder's failure "to observe the requirements of New York law" and "failure to observe the usual procedures" resulted in bank not knowing of any third-party interest in the funds in the account).  The violations of law by SWP are not necessary for the Court to determine the instant motion to dismiss, however.

third-party beneficiary of an insurance contract is determined by state law and the terms of the policy at issue."); *U.S. v. Jackson*, 572 F. Supp. 181, 185 (W.D. Mich. 1983) ("… the Court shall look to the law of Michigan to determine whether the United States is a third-party beneficiary.").

The Complaint does not identify any particular contracts, specify which state's laws govern those contracts, or raise any conflict of law issues.   When no potential conflict of law is demonstrated, "the law of the forum" applies.  *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 557 n.1272 (S.D.N.Y. 2014); *Gonzalez v. Volvo of Am. Corp.*, 752 F.2d 295, 299 (7th Cir. 1985) ("Where the parties fail to raise a possible conflict of substantive laws, the better rule … is that the substantive law of the forum controls."); *see Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir. 1984) (" … in the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied."); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993) ("Where the parties have not identified a conflict between the two bodies of state law that might apply to their dispute, we will apply the law of the forum state …").  Consequently, Plaintiff's claim to enforce its alleged rights as a contractual third-party beneficiary is governed by New York State law.

### B. <u>Plaintiff Cannot Bring a Third-Party Beneficiary Claim Against Pioneer Bank and PBI Based on Contracts that Neither Pioneer Bank Nor PBI Were Parties To</u>

"The New York Court of Appeals has stated that a third party may recover under a contract if the following three elements are established (1) the existence of a valid and binding contract between other parties (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption *by the contracting parties* of a duty to compensate him if the benefit is lost."   *Alliancewall Corp. v. M.D.*

*Bartholomew, Inc.*, No. 86-cv-1211, 1989 WL 16066, at *4 (N.D.N.Y. Feb. 21, 1989) (emphasis added) (citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 336 (1983)).

"A third-party beneficiary has no greater right to enforce a contract than the contracting parties themselves." *Renaissance Housing Development Fund Corp. v. Phoenix Constr. Inc.*, 136 A.D.3d 605, 606 (1st Dep't 2016); *BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 697 (2d Cir. 1993) ("As a third-party beneficiary, BAII possessed no greater right to enforce a contract than the actual parties to the contract."). Accordingly, a claim by an alleged third-party beneficiary is "subject to the same defenses" as a claim by the actual contracting party would be. *BAII Banking*, 985 F.2d at 697; *see Industrial Crane*, 492 F.2d at 774 ("The United States' right against appellant was exclusively as a third party beneficiary. It stood in Billmeier's shoes, and any defenses that appellant could have raised against a claim by Billmeier himself were operative against it, too.").

A dispositive defense to any breach of contract claim is that "one cannot be held liable under a contract to which he or she is not a party." *Victory State Bank v. EMBA Hylan, LLC*, 169 A.D.3d 963, 965 (2d Dep't 2019); *MCI Telecom. Corp. v. John Mezzalingua Associates, Inc.*, 921 F. Supp. 936, 942 (N.D.N.Y. 1996) (Scullin, J.) ("Only those who are parties to a contract may be held liable for a breach of that contract."); *Bhatti v. Federal National Mortgage Assoc.*, No. 1:16-cv-257, 2018 WL 357292, at *3 n.6 (N.D.N.Y. Jan. 18, 2018) (noting that "non-parties had no duty to perform under the contract"); *Black Car and Livery Ins., Inc. v. H & W Brokerage, Inc.*, 28 A.D.3d 595, 595 (2d Dep't 2006) (" … the breach of contract cause of action was properly dismissed as to the respondent, since he was not a party to the agreement in question."); *Interallianz Bank AG v. Nycal Corp.*, No. 93-cv-5024, 1995 WL 406112, at *4 (S.D.N.Y. July 7, 1995) ("A stranger to an express contract incurs no liability under the contract, regardless of whether he receives any benefits thereunder.").

"The third-party beneficiary concept arises from the notion that 'it is just and practical to permit the person for whose benefit the contract is made to enforce it *against one whose duty it is to pay' or perform*." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 43 (1985) (emphasis added). Accordingly, a third-party beneficiary claim cannot be brought against a non-party to the underlying contract since they have no "duty" to "pay or perform" under it. *See Fourth Ocean*, 66 N.Y.2d at 43; *Burns Jackson*, 59 N.Y. at 336; *accord Ben Tom Corp. v. Ohio Dep't of Natural Resources*, No. 89AP-962, 1990 WL 86839, at *4 (Ohio Ct. App. 10th Dist. June 26, 1990) (" … since defendant was not a party to that agreement, plaintiff has no enforceable third-party interest arising out of the agreement against defendant.").

Here, the Complaint does not allege (nor could it) that Pioneer Bank or PBI are parties to the contracts that Plaintiff seeks to "enforce" as an "intended third-party beneficiary." Complaint ¶¶ 33-34, 37. Rather, Plaintiff alleges that the contracts it seeks to enforce were between "payroll companies" (including SWP) and their employer-clients, or between payroll companies (including SWP) and Cloud. *Id.* ¶¶ 33-34. As non-parties to those contracts, Pioneer Bank and PBI have no duties to perform and can incur no liabilities under those contracts. *See Victory State Bank*, 169 A.D.3d at 965; *Bhatti*, 2018 WL 357292, at *3 n.6. Consequently, Plaintiff's third-party beneficiary claim seeking to "enforce" those contracts against Pioneer Bank and PBI fails as a matter of law and must be dismissed. *See Fourth Ocean*, 66 N.Y.2d at 43; *Burns Jackson*, 59 N.Y. at 336.

## <u>CONCLUSION</u>

Based on the foregoing, the two causes of action in the Complaint asserted against Pioneer Bank and PBI (Count II and Count III) fail to state a claim as a matter of law. Accordingly, the

Complaint must be dismissed in its entirety as against Pioneer Bank and PBI pursuant to Fed. R.

Civ. P. 12(b)(6) and with prejudice.

Dated: October 1, 2020
        Albany, New York

DLA PIPER LLP (US)


By:/s/ Robert J. Alessi_____
    Robert J. Alessi (NDNY Bar Roll No. 101019)
    Jeffrey D. Kuhn (NDNY Bar Roll No. 513241)
    677 Broadway – Suite 1205
    Albany, New York 12207-2996
    Tel.: (518) 788-9710
    Fax: (518) 935-9767
    robert.alessi@us.dlapiper.com
    jeffrey.kuhn@us.dlapiper.com

    *Attorneys for Defendants Pioneer Bank and Pioneer
    Bancorp Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all parties in this action/known counsel of record via the CM/ECF system on this 1st day of October 2020.


/s/ Robert J. Alessi
Robert J. Alessi (NDNY Bar Roll No. 101019)